IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 1:19–cv–01851–MDB

WILLIAM CLINTON HILL,

    Plaintiff,

v.

SER JOBS FOR PROGRESS NATIONAL, INC.,

    Defendants.

## ORDER

    Plaintiff, William Clinton Hill, has filed a trial brief (Doc. No. 93), and Defendant, SER Jobs for Progress National, Inc. ("SER Jobs" or "Defendant") has responded (Doc. No. 99.) The primary issue raised in the trial briefs is whether Mr. Hill will be allowed to pursue 42 U.S.C. § 1981 claims during trial. Plaintiff argues that from the inception of this case he has pursued race discrimination claims under § 1981 and Title VII. (Doc. No. 93 at 2.) Although he never expressly cited to § 1981, he "consistently informed the Defendant of his intent to pursue Section 1981 claims, has met the notice-pleading standard, and should be permitted to pursue those claims." (*Id.*) In the alternative, Plaintiff seeks to amend his complaint to include the always-intended § 1981 claims. (*Id.*)

    During a recent conference, Plaintiff articulated the importance of the § 1981 claims, arguing that allowing the claims to move forward is in the interests of justice because the constructive discharge claim—which does not require exhaustion—is still at issue under § 1981,

and because under § 1981—unlike under Title VII—Plaintiff does not have to prove he is an employee of SER Jobs in order to prevail.

For its part, Defendant argues that Plaintiff never alleged a claim under § 1981, and his "attempt to change the theory of his case at this stage in the litigation….would severely prejudice [Defendant]." (Doc. No. 99 at 2-3.) Specifically, Defendant argues that "Plaintiff is attempting to get around the fact that he was not an employee of SER Jobs and that he did not exhaust his administrative remedies for his constructive discharge claim. SER Job's primary defense in this case to date has been that Plaintiff was not an employee." (*Id.*)

For the reasons set forth below, the Court construes the arguments in Plaintiff's Trial Brief (Doc. No. 93) as a motion to amend the operative complaint, and that motion is **GRANTED**.

## BACKGROUND

Plaintiff filed his Amended Complaint on July 29, 2019. (Doc. No. 5.) He alleges Defendant discriminated and retaliated against him because of his race. (*Id*. at 3-4.) The Amended Complaint was filed in response to Magistrate Judge Gordon P. Gallagher's "Order Directing Plaintiff to Cure Deficiencies" filed June 26, 2019. (Doc. No. 4.) The form includes a section called "Jurisdiction" wherein a claimant can identify the "statutory authority that allows the court to consider" the claim:

    **C.**    **JURISDICTION**
*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

**X**    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

\_\_\_    Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

\_\_\_    Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

\_\_\_    Other: (*please specify*) _____

2

(Doc. No. 5 at 2). As reflected in the form, Mr. Hill marked an "X" next to Title VII. (*Id.*) The form does not provide an option for § 1981 claims, but it does allow a claimant to write in any other statutory authority in the "Other" section. (*Id.*) Mr. Hill did not do that here. (*Id.*)

In the pages that follow, Mr. Hill describes his two claims—one for employment discrimination based on race, another for retaliation, also based on race. (*Id.* at 3-4.) He alleges he is a 61-year-old African American male who was employed by Defendant as an administrative assistant beginning in June 2017. (*Id.* at 6.) He further alleges that Habitat for Humanity was a "host agency for [Defendant] where [Defendant] send[s] qualified participant[s] in its program." (*Id.*) He alleges Habitat for Humanity had an opening for an administrative assistant, and though Plaintiff was qualified for the position, he was rejected. (*Id.*) He also claims that Defendant sent a lesser-qualified, non-African American candidate to apply and kept the employment opportunity hidden from Plaintiff until it was no longer available. (*Id.*) Plaintiff further alleges that Defendant's conduct was "intentional," and reflected an effort to keep Mr. Hill from obtaining the position. (*Id.*)

3

On August 28, 2019, Defendant moved to dismiss the Amended Complaint on the basis that Plaintiff was not an employee of SER Jobs and thus could not maintain a Title VII claim. (Doc. No. 11.) Defendant also argued that Plaintiff failed to exhaust his remedies for the constructive discharge claim under Title VII. (*Id.*) The court found that "on the record as presented by SER Jobs, it could not determine whether Plaintiff was SER Jobs' employee," but it "granted the motion to dismiss Plaintiff's constructive discharge claim because Plaintiff did not exhaust his administrative remedies[,]" as required by Title VII. (Doc. No. 99 at 2 (citing Doc. No. 23.).)

Later in the case, Defendant re-asserted the defense that Plaintiff was not an employee of SER Jobs, this time in a motion for summary judgment. (Doc. No. 32.) The court agreed with Defendant and entered summary judgment in its favor on February 25, 2021. (Doc. Nos. 40; 41.) Plaintiff appealed the summary judgment order, and on September 21, 2021, the Tenth Circuit reversed and remanded for further proceedings. (Doc. No. 50.)

With trial on the horizon, this Court issued an order for the appointment of pro bono counsel, and Ms. Jesse Fishman entered her appearance on November 1, 2022. (Doc. No. 79.) Almost immediately after entering her appearance, Ms. Fishman served Plaintiff's Second Supplemental Disclosures in which, according to Plaintiff, "Section 1981 was cited to twenty-one times[.]" (Doc. No. 93 at 5.) Moreover, Plaintiff states that "[o]n October 25, 2022—even before entering an appearance—[Plaintiff's counsel] emailed Defendant's counsel to set up a call to discuss potential jury instructions, explaining that the intended jury instructions would include Section 1981 instructions." (Doc. No. 93 at 6.) Indeed, Plaintiff notes that "[t]he model jury instructions … are the same for both Section 1981 and Title VII[.]" (*Id.* at 10.)

4

Arguing in favor of including the § 1981 claims, and asserting that only minimal prejudice could befall on Defendant, Plaintiff notes that "very little discovery has taken place in this case. No depositions have yet occurred, and Defendant chose not to serve any written discovery on Plaintiff." (*Id.*) Defendant, on the other hand, argues that it would be severely prejudiced by the inclusion of § 1981 claims because Defendant's primary defense has been that Plaintiff was not an employee—a defense that will have reduced force if the § 1981 claim is included. (Doc. No. 99 at 3.) Defendant further argues that it "has been operating under the premise that Plaintiff's constructive discharge claim has been dismissed since November 12, 2019," (*id.*) because indeed that claim—at least under Title VII—was dismissed long ago. (Doc. No. 23.) In other words, the prejudice alleged by Defendant stems from the weakening of what Defendant calls its "primary" defense to the Title VII discrimination and retaliation claim, and from having to defend a constructive discharge claim that was dismissed under Title VII and would essentially be revived under § 1981.

## LEGAL STANDARD

As a threshold matter, the Court agrees with Defendant that what is before it currently "is the equivalent of asking leave to amend [Plaintiff's] complaint and must be evaluated by the court under the standards set forth in Rule 15(a)." (Doc. No. 99 at 4.) While it is highly likely that Plaintiff intended to avail himself of all applicable laws in filing his discrimination claims, nowhere in his Amended Complaint does he expressly state that he intends to pursue claims under § 1981. Even construing his pleadings liberally, as the Court must do in light of his *pro se* status at the time, it is difficult to surmise from his Amended Complaint—or from any other filing or order of the court addressing his claims—that he pleaded a § 1981 claim. Thus, to the

5

extent the Court will allow it now, it must analyze Plaintiff's request under the framework of a proposed amendment pursuant to Rule 15.

Additionally, because the Scheduling Order set forth a deadline by which pleadings must be amended, and that deadline has long since passed, Plaintiff must demonstrate good cause for the amendment under Fed. R. Civ. P. 16(b)(4) as well. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) ("We now hold that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so.").

> Rule 16(b)[(4)]'s good cause standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b)[(4)] does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, good cause means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, the Court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations omitted). Notably, however, "rigid adherence to the pretrial scheduling order is not advisable." *Sil-Flo, Inc. v. SHFC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990).

If a plaintiff demonstrates good cause under Rule 16(b)(4), a court then moves to the second step of the analysis and reviews whether the plaintiff has satisfied the requirements of Rule 15(a). *Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011). Under Federal Rule of Civil Procedure 15(a)(2), the court is to freely allow amendment of the pleadings "when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal

Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "[T]he liberal standard for granting of motions for leave to amend unless the amendment inflicts undue prejudice on the non-moving party reflects the Court's underlying policy that pleadings should enable a claim to be heard on its merits." *James et al. v. Fenske*, 10-cv-02591-WJM-CBS, 2012 WL 592855 at *3 (D. Colo. Feb. 23, 2012) (citing *Calderon v. Kan. Dep't of Soc. & Rehabilitative Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)).

Undue prejudice to a defendant is the most important factor in considering whether a plaintiff should be permitted to amend his complaint. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense." *Id*. (quotation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id*. at 1208 (citations omitted).

## ANALYSIS

### I.   Fed. R. Civ. P. 16(b)(4)

The Court must begin its analysis by determining whether Plaintiff has shown "good cause" for the proposed amendment. Although Plaintiff argues Defendant has been on notice of the § 1981 claims since the inception of the case, the request to amend was only recently made on December 16, 2022. (Doc. No. 93.) The request therefore came well after the close of

discovery and just months before trial.[1] Still, courts have held that so long as there is good cause, even a request on the eve of trial may be granted. *See, e.g.*, *Porter v. Dartmouth Coll.*, No. CIV. 07-CV-28-JL, 2010 WL 272005, at *1 (D. N.H. Jan. 15, 2010) (finding good cause "to amend and supplement [plaintiffs'] complaint before trial … set for next month," when the amendment involved factual allegations the parties knew about "for quite some time").

Here, Plaintiff has pursued his claims *pro se* through discovery, through dispositive motions, and even through a Tenth Circuit appeal. His *pro se* status—on its own—does not entitle him to the application of different rules, nor does it relieve him from the heavy responsibility of complying with deadlines and court orders. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). However, it is a consideration as the Court determines whether Plaintiff has been diligent in his efforts. *See Pumpco*, 204 F.R.D. at 668 (noting the Rule 16 good cause standard "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment").

On review of the docket, the Court finds Plaintiff has been diligent in his efforts to move the matter forward. Even prior to securing counsel, Plaintiff responded to dispositive motions, filed motions for extension of time, a motion to compel discovery, a motion in limine, even proposed jury instructions. He has made efforts to comply with deadlines and appropriately exhaust remedies, and he has successfully appealed a summary judgment order. A failure to amend sooner, therefore, does not reflect an idle plaintiff or gamesmanship of any kind, but rather a *pro se* litigant with limited knowledge of the law, unable to parse through statutes

---

[1] Although trial had been set for February 27 to March 2, 2023, the Court recently vacated those trial dates to provide the parties an opportunity to complete discovery, including any discovery that becomes necessary in light of this Order.

sufficient to expressly assert discrimination claims under two different laws. The Court finds there is good cause for the late amendment, and Rule 16 is therefore satisfied.

**II.     Fed. R. Civ. P. 15(a)(2)**

Broadly, when reviewing a proposed amendment under Rule 15(a), the Court asks "whether justice would be served by amendment." *Myers v. City of Loveland, Colo.*, 2013 WL 3381276, at *5 (D. Colo. July 8, 2013); *see Minter*, 451 F.3d at 1204 ("[Rule 15(a)] itself states that 'leave shall be freely given when justice so requires.' The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" (quoting Fed.R.Civ.P. 15(a); *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982))). The Rule 15(a) standard is a "liberal" one. *James et al.*, 102012 WL 592855 at *3. "[L]eave should generally be permitted unless the moving party unduly delayed or failed to cure, the opposing party would be unduly prejudiced, or the proposed amendment would be futile." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**A.     Undue Delay**

Defendant argues that a request to amend should be denied where "it appears the plaintiff is amending the complaint to 'salvage a lost case by untimely suggestions of new theories of recovery [or] to present 'theories seriatim' in an effort to avoid dismissal." (Doc. No. 99 at 5 (quoting *Minter*, 451 F.3d at 1206).) Defendant further argues that this request is so severely delayed that it has indeed become undue, particularly because Plaintiff did not allege § 1981 violations in the original complaint, the Amended Complaint, the response to the motion to dismiss, the response to the summary judgment motion, or any of the appellate pleadings filed in the Tenth Circuit. (Doc. No. 4-5.)

Plaintiff, on the other hand, argues that the amendment is not delayed at all because it only seeks to clarify claims and facts that were previously pled. (Doc. No. 93 at 9-10.)

"The important inquiry is not simply whether Plaintiff has delayed, but whether such delay is undue." *Green v. Wiley*, No. CIV.A. 07-CV-01011DM, 2009 WL 256588, at *1 (D. Colo. Feb. 4, 2009) (citing *Minter*, 451 F.3d at 1206). The Tenth Circuit "focuses primarily on the reason for the delay." *Minter*, 451 F.3d at 1206. "A motion to amend is untimely if, among other reasons, the moving party has made the complaint a 'moving target,'" or as Defendant claims, "is trying to 'salvage a lost case by untimely suggesting new theories of recovery,'" or is "knowingly waiting until the eve of trial to assert new claims." *Myers v. City of Loveland, Colo.*, 2013 WL 3381276, at *5 (D. Colo. July 8, 2013) (quoting *Minter*, 451 F.3d at 1206). That said, simple "lateness does not itself justify the denial of the amendment." *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1189 (10th Cir. 2019) (internal quotation and citation omitted). At issue in an undue delay analysis are the reasons behind the delay. That is, whether Plaintiff is engaged in "strategic gamesmanship" or acting with a "dilatory motive." *Ransaw v. Hilkey*, No. 20-cv-03584-NYW, 2021 WL 5068021 (D. Colo. Aug. 25, 2021).

Here, Defendant does not contend that Plaintiff has acted with strategic motive in the timing of this request—indeed, Defendant knows, as does this Court, that Plaintiff's litigation strategy is necessarily modified and enhanced now that he has counsel appointed to him. Additionally, after reviewing the docket, the Court cannot identify any gamesmanship that occurred on Plaintiff's part. Instead, it simply appears—as noted above—that this *pro se* litigant did not understand the importance of expressly identifying all applicable laws. Further, counsel for Plaintiff immediately identified the issue, even before entering an appearance, and provided

Defendant with ample notice that—from her perspective—§ 1981 claims were at issue. (Doc. No. 93 at 6.). Thus, the Court does not find undue delay under these circumstances.

**B.     Undue Prejudice**

Prejudice is the key consideration in this case. *See Minter*, 451 F.3d at 1207 (calling undue prejudice the "most important" factor in a Rule 15(a) analysis). The proposed amendment comes years after the case was first filed, and trial is imminent. The Court is very sensitive to Defendant's contention that: (1) for a long time it has operated as though the constructive discharge claim was no longer at issue (a claim that would still be at issue under § 1981), and (2) it has placed great stock in its defense that Plaintiff was not an employee of SER Jobs (a defense that carries less weight if Plaintiff is proceeding not just under Title VII, but also under § 1981). However, the Court is not persuaded that any prejudice to Defendant here is *undue. See Woods v. Sunrise Senior Living, Inc.*, No. CV-06-644-W, 2006 WL 8436120, at *3 (W.D. Okla. Sept. 26, 2006) (saying that "[p]rejudice to the opposing parties 'is the touchstone for the denial of an amendment'" but adding that "[t]he prejudice must be undue" in order to justify denial) (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004)).

Here, as Plaintiff points out, very little discovery has occurred. (Doc. No. 93 at 10.) Defendant did not retain an economics expert to opine on damages, did not serve written discovery on Plaintiff, and did not depose Plaintiff until very recently when pro bono counsel was assigned to the case and a request for limited discovery was made by the parties and granted by the Court. Certainly it is Defendant's prerogative to forgo certain discovery and place most—or all—its eggs in the basket that Plaintiff is not an employee of SER Jobs. However, Defendant cannot use its own litigation decisions to argue undue prejudice.

11

Moreover, to the extent there is some prejudice, the Court believes it is very limited. First, Plaintiff's § 1981 discrimination claim is very similar to his Title VII discrimination claim. It is based on the same facts, circumstances, and allegations, and it stems from the very same incidents and conduct already at issue. *Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir.1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"). Likewise, the defenses are similar. Under both Title VII and § 1981, SER Jobs must defend against the allegation that, in passing up Plaintiff for a promotion, placing him on leave, and retaliating against him, SER was motivated by racial animus. Indeed, under § 1981, Plaintiff has an even higher burden because he must show intentionality. *See Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) ("Only intentional discrimination may violate section 1981" (citing *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, (1982))). The higher burden under § 1981 cuts against the argument that Defendant is prejudiced in its ability to defend against it. Moreover, Defendant's argument, that the inclusion of a constructive discharge claim is severely prejudicial, is also unavailing. Plaintiff's termination is part of a series of events that Plaintiff contends gave rise to his discrimination and retaliation claims, generally. In other words, the constructive discharge claim stems from the very same facts and circumstances already alleged and still at issue under Title VII. (*See* Doc. No. 5.)

Additionally, the parties alerted the Court to the issue of § 1981 claims *before* Plaintiff's deposition, and the Court directed Defendant to depose Plaintiff as though the § 1981 claims are at issue. Therefore, any prejudice to Defendant as it concerns the already taken deposition of Plaintiff—should be non-existent.

And finally, the Court disagrees with Defendant that the inclusion of § 1981 claims requires additional damages discovery. (*See* Doc. No. 99.) Damages under Title VII and damages under § 1981—at least in this case—would be identical. The crux of Plaintiff's claim—under either Title VII or § 1981—is that Defendant discriminated and retaliated against Plaintiff on the basis of race, and that Defendant's actions precluded Plaintiff's gainful employment for a set period of time. The Court will not reopen expert discovery just because the exact same relief is available to Plaintiff under a different statute. Doing so would amount to a discovery "do-over" for Defendant. Nothing about the § 1981 claim changes the underlying facts, circumstances, allegations, or claimed damages in this case.

## CONCLUSION

For the reasons set forth herein, the Court will allow the proposed amendment. And, although the Court does not believe additional discovery is necessary, it will permit Defendant to conduct limited discovery in connection with the proposed "Second Amended Complaint." (Doc. No. 93-3.) Specifically, the Court will permit the following limited discovery:

1) Defendant may serve on Plaintiff three (3) interrogatories, three (3) requests for production, and three (3) RFAs, no later than February 17, 2023. Defendant's discovery requests shall not include subparts and must be aimed at discovering information relevant to the § 1981 claims and defenses.

2) Plaintiff shall respond to the written discovery requests on or before March 1, 2023. To avoid extended discovery disputes, Plaintiff's responses must be fulsome, and objections should be limited to those that are absolutely necessary.

3) After Plaintiff has responded to the discovery requests, Plaintiff shall appear for deposition, which shall be limited in scope—aimed only at clarifying, and/or following up on, information set forth in Plaintiff's responses to the written discovery ordered herein. The deposition shall not exceed two (2) hours.

Accordingly, it is **ORDERED** that Plaintiff's motion to amend is **GRANTED.** The Clerk is directed to file the "Second Amended Complaint" (Doc. No. 93-3) as a separate docket entry.

Dated this 10th day of February, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

14